IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ANNEDRICH VILLA-GARCIA,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO. 10-2200 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Annedrich Villa-García (hereafter plaintiff "Villa-García") filed this action for judicial review of the final decision of defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying her application for entitlement to a period of disability and ensuing benefits. (Complaint, Docket No. 1). Plaintiff Villa-García requested this court, through Atty. Salvador Medina de la Cruz, to reverse for lack of substantial evidence the determination and findings of the Commissioner or in the alternative, that the case be remanded for further proceedings necessary for the proper adjudication.

The prior administrative decision denying disability and benefits was based on the assessed residual functional capacity of plaintiff Villa-García for sedentary type of work, regardless of the presence of a severe impairments, to wit, muscular dystrophy, Charcot-Marie-Tooth disease (hereafter "CMT"),[1] which is an incurable type of polyneuropathy, and the presence of associated pain and limitations. No vocational expert or medical advisor

---

[1] A progressive neuropathic syndrome characterized by foot and leg deformities, weakness and atrophy.

testified at the administrative hearing where the Commissioner found plaintiff Villa-García was not under disability.

The Commissioner answered the Complaint and filed copy of the administrative record. (Docket Nos. 9 and 10). Then, plaintiff Villa-García filed the memorandum of law. (Docket No. 15). Thereafter, the Commissioner filed the corresponding memorandum in support of its administrative decision denying plaintiff's application. (Docket No. 18).

Plaintiff granted consent to jurisdiction by a United States Magistrate Judge. (Docket No. 4). As such, this Opinion and Order follows.

After an examination of the administrative record as a whole, as well as counsel for plaintiff's memorandum of law, defendant's brief, and the medical evidence on file, with copy of the administrative hearing transcript, this United States Magistrate Judge finds the Commissioner's decision is not supported by substantial evidence and should be remanded for further consideration as discussed below.

**GENERAL BACKGROUND**

Plaintiff Villa-García submitted that since age two (2) she was found with a neurological syndrome and was treated at the Puerto Rican Clinic. She received treatment at the Shriner's Children Hospital in Philadelphia. In 1984, she was diagnosed with flat fleet and continued walking since then with pain, greater on the left, and special shoes which were prescribed. In 1986, plaintiff Villa-García was examined and found with full range of motion in the upper extremities with 3/5 weakness of all muscle groups. Lower extremities had tightness of heel cord and dorsiflex only to 10 degrees of neutral. Muscle strength was 3/4 of quadriceps and hip flexor; dorsi-flexor of the foot was absent. Due to

pain, plaintiff was admitted at Shriner's Children Hospital and was therein diagnosed with CMT disease. Studies revealed polyneuropathy, specially in the lower extremities and she was placed on bilateral double upright short leg braces.

Plaintiff Villa-García continued treatment with Dr. Juan Barrientos due to symptoms of tibio-peroneal weakness, leg pain with a significant history of CMT, muscular dystrophy. She had poor response to NSAIDS in the last years, poor tolerance to leg effort and ambulation and standing positions. Her knees, feet, hips and back are the most affected areas by pain, which is precipitated by effort, standing, prolonged sitting and ambulation. Pain is moderately severe.

On March 17, 2006, plaintiff Villa-García filed the claim for disability benefits and ensuing benefits claiming inability to work from June 1, 2000, through March 31, 2002, her last insurance date, because of muscular dystrophy and pain in her hands and knees.

**PROCEDURAL HISTORY AND THE ADMINISTRATIVE HEARING**

After plaintiff's initial application for social security disability benefits was denied, the requested administrative hearing was held on June 30, 2009, wherein plaintiff Villa-García was present and testified. The presiding Administrative Law Judge (hereafter "ALJ") issued an opinion on August 3, 2009 finding plaintiff not under disability. The Appeals Council reviewed the decision and affirmed same.

The ALJ's administrative decision determined the evidence in the record supported the existence of severe impairments identified as polyneuropathy which had more than a minimal effect on plaintiff's ability to perform basic work-related activities. The impairments did not meet or medically equal the listed impairments. As to the plaintiff's

medical conditions, the ALJ considered the medical history and the previous diagnosis in 1986 of spino-cerebellar atrophy, hereditary, as well as the electromylogram study of poly neuropathy specially in the lower extremities, affecting the peroneal muscles.

Still, plaintiff Villa-García, although found unable to perform her past relevant work as pharmacist technician, was found able to perform the full range of sedentary type of work. Considering there were jobs available within plaintiff's residual functional capacity for the full range of sedentary work, the ALJ concluded, without a vocational expert's testimony nor a medical expert, that despite plaintiff's exertional limitations and even considering non-exertional impairments alleged to be severe, persistent and disabling, including pain, these allegations were not fully supported by the medical evidence. As to the emotional conditions, same were of recent development and mostly controlled by treatment. Thus, the ALJ concluded the spine and neurological condition was not fully developed by the period under consideration. As such, the ALJ found plaintiff Villa-García was not under disability.

## THE ALJ'S DECISION AND THE APPEALS COUNCIL

The ALJ applied in his administrative process the evaluation process mandated by law, insofar as concluding that plaintiff: (1) meets the non-disability requirements for a period of disability and disability insurance benefits and is insured for benefits through the insured period, up to March 31, 2002; (2) has not engaged in substantial gainful activity since the alleged onset date of disability of June 1, 2000; (3) allegations of severe impairments had more than a minimal affect on her ability to perform basic work-related activities, constituting severe impairments; (4) plaintiff did not have an impairment or

combination that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Tr. p. 19-23*); (5) upon consideration of the entire record plaintiff had the residual functional capacity to perform the full range of sedentary work. (*Id. pp. 24-26*).

The ALJ discussed the medical evidence during the relevant period. Progress notes of treating physician Dr. Juan Barrientos were examined. Dr. Barrientos first saw plaintiff on June 27, 2000 due to low back, hands, knees, feet, and hip pain. The patient was considered to tolerate pain with prescribed medication. According to the ALJ, it was not until a report dated June 5, 2006, that Dr. Barrientos indicated plaintiff's physical condition had worsened. By then, the ALJ concluded she had difficult gait due to leg weakness and marked decreased motions in legs, multiple joint pain, moderate to severe, difficulty in walking, hand grip weakness, bilateral foot drop and pain in the hands and hip. The patient had decreased reflex and ongoing pain precipitated by physical effort, prolonged sitting and prolonged ambulation. She was also depressed and anxious, secondary to her physical condition. An EMG of August 1, 2006 showed severe generalized mixed type sensory motor poly neuropathy. (*Id. p. 21*).

The ALJ indicated he considered the opinion of Dr. Barrientos regarding severity of impairments but did not give controlling weight or deference for considering same disproportionate in severity to the preponderance of the medical or evidence of record. The ALJ indicated the entries did not state the factors or basis to support the assessment and the doctor had not placed or recommended hospitalization or placement in sheltered or highly supported living environment regardless of the severity of plaintiff's conditions. (*Id. p. 22*).

According to the ALJ's opinion, plaintiff Villa-García's musculoskeletal and emotional symptoms are triggered mostly by arduous physical exertion or complex tasks, which should be avoided, but otherwise were not established as severe, frequent or persistent nature. The ALJ indicated he did not consider plaintiff's allegations credible by observing her demeanor throughout the record. The residual functional capacity assessment, as stated by the ALJ, was considered essentially in agreement with those made by state agency physician, upon consideration of the entire record, and found adequately supported by the preponderance of the objective medical findings and other evidence. The ALJ also indicated that pain and other symptoms were not of such frequency, intensity or duration to be considered disabling. Furthermore, the ALJ stated as speculative by 1985 that plaintiff had muscular dystrophy, although making reference to treatment at the Schriner's Children Hospital in 1986. (*Id. pp. 22-23*).

According to the ALJ, although at the present time the significance of plaintiff's physical impairments cannot be minimized, he concluded that evidence of a condition that came into existence after the expiration of the insurance covered period, should not be the basis for a finding of disability. (*Id.* p. 23).

## LEGAL ANALYSIS

**A. Legal Standard**.

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not

conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he/she is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists, or whether he/she would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. §§ 404.1520(b). If he/she is not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f).

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his former employment because of the alleged disability. <u>Santiago v. Secretary of Health and Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).

In the present case, plaintiff Villa-García was found unable to perform her previous work as a pharmacist technician. However, the ALJ concluded, at step five of the evaluation process, plaintiff Villa-García was not considered disabled since, although unable to perform her past relevant job, she could still perform other type of work within the sedentary level of exertion. The ALJ indicated, without a vocational expert's testimony or consideration of non-exertional limitations imposed by pain and weakness, the existence of jobs within such level of exertion such as call operator, election clerk and surveillance system monitor. (*Tr. p. 25*).

Counsel for plaintiff claims, in opposition to the Commissioner's decision, that the denial of disability benefits was not supported by substantial evidence. Plaintiff Villa-García has established she suffers since early childhood with CMT disease for which there is no cure. The National Institute of Neurological Disorders and Stroke describes the typical symptoms of CMT as: "A typical feature includes weakness of the foot and lower leg muscle, which may result in foot drop and a high-stepped gait with frequent tripping or falls. Foot deformities, such as high arches and hammertoes are also characteristic due to weakness of the small muscles in the feet. In addition, the lower legs may take on an 'inverted champagne bottle' appearance due to the loss of muscle bulk. Later in the disease, weakness and muscle atrophy may occur in the hands, resulting in difficulty with fine motor

skills." Charcot-Marie-Tooth Disease Fact Sheet, Pub. No. 07-4897, National Institute of Neurological Disorders and Stroke, National Institutes of Health (April 2007), available at: http://www.ninds.nih.gov/disorders/charcot_marie_tooth/detail_charcot_marie_tooth.htm. [See Attachment A].[2]

Plaintiff Villa-García has been issued orthopedic equipment to make walk easier. Regardless of subsequent muscular dystrophy diagnosis, the ALJ failed to consider as having been duly established, plaintiff had been receiving treatment for polyneuropathy, a disease of or damage to the nerves.[3] Plaintiff further avers that Dr. Barrientos' record, including the report of 2006, which the ALJ disregarded as not related to the insured period, clearly indicated the symptoms and limitations therein discussed applied as of June 2000. (*Tr. p. 245*). Plaintiff Villa-García also testified at the administrative hearing she suffered from CMT disease since diagnosed at seven years old when she went to the Shriners' Children Hospital in Philadelphia. (*Id.* p. 297).

Since the ALJ determined plaintiff Villa-García could not perform her former job as pharmacy technician, the burden shifted to the Commissioner to demonstrate the existence of jobs in significant numbers she could perform within her residual functional capacity and in terms of the limitations and residual functional capacity. With the presence of one or more non-strength limitation, that is, non-exertional impairments, the ALJ should not have

---

[2] See attached herein document entitled "Attachment A" as required by the Judicial Conference as approved in the March 2009 session for "all internet materials cited in final opinions be considered for preservation" and that [e]ach judge ... should retain the discretion to decide whether the specific cited resource should be captured and preserved." As such, the site's page was downloaded and filed as an attachment to the judicial opinion in the CM/ECF system.

[3] Mononeuropathy means one nerve is involved. Polyneuropathy means that many nerves are involved. Neuropathy affects nerves that provide feeling (sensory neuropathy) or affect movement (motor neuropathy). It can also affect both. Symptoms include decreased feeling in any area of the body, weakness of the fact, arms, legs or feet, difficulty walking, pain, burning, tingling or abnormal feeling in any area of the body. (Plaintiff's Memo, p. 3, n.5).

used the GRID which is not proper upon the existence of impairments other than strength limitations and certainly not when non-exertional limitations are present.

A review of the record as a whole and the medical evidence in support indicate that plaintiff Villa-García is a younger individual, with vocational education, and past relevant work experience as a pharmacy technician, which did not require lifting or carrying more than ten (10) pounds, but walking and/or standing more than six (6) hours a day.

Plaintiff has received treatment since 1986 at the Shriners' Hospital for Crippled Children. She presented persistent muscle and foot deformity which were first noted at two years of age. She had weakness in both feet and arms. At the time the diagnostic impression was of musculo-skeletal disease of undetermined cause. (*Tr. pp.146-148*). She was provided with braces by eight years old upon etiology of her weakness and deformity of her feet. The possible diagnosis was of CMT disease and findings of chronic hyperthropic neuropathy. EMG studies confirmed polyneuropathy, specially in the lower extremities, affecting the peroneal muscles. (*Id. p. 156*). No significant treatment was available and the patient was placed in bilateral double upright short leg braces. She was thereafter provided with EMG studies, possible myelogram in six months and follow-up every six months, with recommendation of being admitted to the hospital for complete neurology evaluation, and nerve conduction study. (*Id.* p. 164).

Subsequent orthopedic examination as far back as 1986 revealed the spine was straight, with hyperdorlosis of the lumbar spine, without tenderness. She had lack of forward flexion and cannot touch her toes. The upper extremities had full range of motion with 3+/5 weakness of all muscle groups of the upper extremities, including biceps, triceps,

wrist extensor and flexor, finger extensor and flexor and intrinsic of the hand bilaterally. The lower extremities had full range of motion and again the muscle strength was noted to be 3+/4 in the quadriceps, hip flexor. Dorsi-flexor at the foot were absent. Reflexes were noted to be +1 at the knee and ankles bilaterally. Feet arches were absent. She had mild tenderness in the sinus tarsi on the left and distal to the medial malleolus on the right. The foot could only be brought to within 20 degrees of dorsiflexion. (*Id. p. 167*). There is medical treatment as of 1996 which is mostly illegible, for progress notes and treatment by one Dr. Juan C. Román Feliciano. (*Id. pp. 179-191 and 194-212*).

The treating physician, Dr. Juan M. Barrientos refers to treatment with a first examination on June 27, 2000 for tibia peroneal weakness, leg pain upon a diagnosis of CMT, muscular dystrophy. Last examination is referred as May 3, 2006. There was marked decreased motion in both legs. (*Id. pp. 222-224*). The report sheet of Dr. Barrientos, with reference to June 27, 2000 through December 2, 2006, refers to the presence of muscular dystrophy, CMT type, anxiety, depression, anemia and atrophy in extremities. (*Id. p. 241*). The symptoms were shown as poor tolerance to leg effort, ambulation, standing position, involving the areas of the knee, feet, hips and low back with pain. The pain was initially tolerated with pain medication but later had poor tolerance to NSAID medication [nonsteroidal anti-inflammatory drugs], which was precipitated by effort, standing position, prolonged sitting and ambulation. It also referred to the presence of a depressive mood and anxiety, secondary to physical limitations. (*Id., p. 242*). The patient was considered able to sit, stand or walk for about two hours, including some period of walking of thirty (30) minutes, shifting positions at will and take unscheduled breaks. The legs should be elevated

for relief at knee level. Sedentary positions could be tolerated for two-three hours. (*Id. p. 243*). Plaintiff Villa-García required use of a cane or assistive device, being able to occasionally carry less than 10 pounds. She could not climb ladders or stairs. (*Id. p. 244*). The report refers the above limitations and symptoms were present at the earliest date of June 1, 2000. (*Id., p. 245)*.[4]

Plaintiff Villa-García went to vocational rehabilitation which paid for her studies and then for half of her salary as a pharmacy technician during her first year of work. She testified at the administrative hearing held on June 30, 2009, she needs the help of her mother and husband to take care of her children. Her mother picks them up in the morning, leaving the children at school, and taking plaintiff with her to the house until the husband picks plaintiff Villa-García in the afternoon, as he then takes care of the household chores and the children. Plaintiff does not participate in recreational activities and does not drive.

Plaintiff Villa-García left her job as pharmacist technician because of pain in the hands which caused them to close up and could not open bottles. She also worked at another pharmacy but got sick a lot, could not close up her hands and her feet would get swollen, not being able to stand for very long. (*Id. pp. 297-299*). She is a twenty-eight year old female who walks with the help of a cane and as a child with assistive orthopedic braces, which she stops using on and off for a couple of days because it caused blisters and scrapes when it rub against her skin. The physicians have indicated her condition is not susceptible of improvement and no treatment, except to relieve pain is available. (*Id., p. 301*). She is

---

[4] Counsel for plaintiff has previously indicated the ALJ disregarded the medical report and assessments relates to the presence of symptoms and conditions during the insured period, as well as upon subsequent treatment in 2006.

unable to carry pots or pans, does not open cans or jars and cannot handle bottle caps. She refers as eating mostly with a spoon and unable to cut meat, if hard. (*Id.*, *pp. 316 and 319-320*).

B. **Conclusions of Law**.

The Court of Appeals for the First Circuit has previously discussed the ALJ is "not required to recite every piece of evidence that favored appellant." Stein v. Sullivan, 966 F.2d 317, 319 (7th Cir. 1992) (noting that the level of articulation required is not precise). *See* 20 C.F.R. § 404.1527(d) ("We will always give good reason in our notice of determination or decision for the weight we give your treating source's opinion); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The available medical record shows plaintiff Villa-García has suffered from childhood from polyneuropathy and was diagnosed with CMT. She attended vocational studies which assisted her in obtaining a first job as pharmacist technician. Plaintiff's three jobs in the same field were of limited nature.

It has also been established plaintiff Villa-García is unable to perform her past relevant work for which it was the burden of the Commissioner to establish the existence of jobs in significant numbers in the national economy within plaintiff's residual functional

limitations, both exertional and non-exertional. Only when non-exertional limitations are mild to moderate would reliance on the GRID at set five be considered harmless.[5]

Limitations of functions are classified as exertional or nonexertional. *See* 20 C.F.R. 404.1569a. Impairments, including pain or mental conditions, can cause exertional and/or nonexertional limitations of functions. *Id.* Exertional limitations are those that affect a claimant's "ability to meet strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling). *Id.* Non-exertional limitations are those that affect a claimant's "ability to meet the demands of jobs other than the strength demands." *Id.* Examples of non-strength demands of jobs are the ability to concentrate, or to perform "the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." *Id.* Thus, there can be an impact of non-exertional limitations on the occupational base.

In the instant case, there was no appropriate vocational expert's testimony as to the existent non-exertional limitations imposed by plaintiff's conditions related to weakness, difficulty in ambulation, and pain, as a result of polyneuropathy and diagnosed condition of CMT, which was subsequently referred also to muscular dystrophy. Where a claimant has non-exertional impairments that significantly affect capacity for the full range of work he/she is determined capable of performing within his/her residual functional capacity, the vocational expert would be of significant assistance as to how these limitations erode the performance of the full range of jobs within her residual functional capacity. In the present

---

[5] The GRIDS provide an analysis of the various vocational factors such as age, education and work experience in combination with the individual's residual functional capacity for work in evaluating a claimant's ability to engage in substantial gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App.2.

case, the ALJ determined plaintiff Villa-García could perform sedentary type of work. For this reason, the Commissioner should carry the burden of showing availability of jobs in the national economy by means other than the GRID, that is, obtaining the testimony of a vocational expert.[6] Through the vocational expert, the ALJ may determine and obtain what kind of jobs remain, within sedentary level of exertion, for individuals who like plaintiff Villa-García also suffers from limitations imposed by her non-treatable CMT condition and/or subsequently diagnosed muscular dystrophy.

The testimony from a vocational expert is substantial evidence only when the testimony is based on correctly phrased hypothetical questions that captures the concrete consequences of a claimant's deficiencies. Taylor v. Chater, 119 F.3d 1274, 1278 (8th Cir. 1997) (quoted in Roberts v. Apfel, 222 F.3d 466, 471 (8th Cir. 2000); *see* Ramírez v. Barnhart, 372 F.3d 546 (3d Cir. 2004). The vocational expert's testimony which is absent in this case, together with the findings supported by the record as to the existence of significant non-exertional limitations, fail to meet the burden of the Commissioner as to jobs available within the residual functional capacity for sedentary level of exertion, making the ALJ's determination to rely in the GRID not be considered a harmless error.

The ALJ in the present case considered by the time plaintiff's insured period expired there was no certain diagnosis of muscular dystrophy. The issue is whether or not a claimant is incapacitated as of the date the insured status expires, as the ALJ indicated as to plaintiff Villa-García. Deblois v. Secretary of Health & Human Servs., 686 F.2d 76, 80-81 (1st Cir. 1982); Cruz Rivera v. Secretary of Health & Human Servs., 818 F.2d 96, 97 (1st

---

[6] The GRID may not be fully applicable where the nature of a claimant's impairment is non-exertional, such as when a claimant has a certain mental, sensory, or skin impairment. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 2000.00(e).

Cir. 1986). Still, retrospective medical diagnoses may constitute relevant evidence of pre-expiration disability.[7] Medical evidence may still bear upon the severity of a claimant's condition before the expiration of his/her insured status and courts have considered that post-coverage medical evaluations have some evidentiary value if they contribute to the overall critical picture of the claimant's condition during the relevant period of coverage. *See* Kerner v. Celebrezze, 340 F.2d 736 (2d Cir. 1965); Alcaide v. Secretary of Health & Human Servs., 601 F.Supp. 669, 672 (D. Puerto Rico 1985). *See also* Suarez v. Secretary of Health & Human Servs., 755 F.2d 1, 4 n. 4 (1st Cir. 1985).

Furthermore, in addition to above discussed, the testimony of a medical expert may be needed because the ALJ is not qualified to interpret raw medical data in functional terms as to the medical record regarding the limitations imposed by a diagnosed condition of CMT and the developing of muscular dystrophy. Rodríguez v. Secretary of Health & Human Servs., 893 F.2d 401, 403 (1st Cir. 1989).

To review the final decision of the Commissioner courts must determine if the evidence of record meets the substantial evidence criteria. Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The findings of the Commissioner as to any fact are conclusive, if supported by the above stated substantial evidence.[8] The court would set aside a denial of benefits only if it is not supported by substantial evidence or if it is based

---

[7] Jones v. Chater, 65 F.3d 102 (8th Cir. 1995).

[8] Falu v. Secretary of Health & Human Servs., 703 F. 2d 24 (1st Cir. 1983).

on a legal error.  Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  *See* Rodríguez, 647 F.2d at 222.

Considering the above discussed, substantial evidence does not support the decision of the Commissioner in this case. As such, remand for further proceedings is the appropriate remedy following the judicial ALJ's determination that plaintiff was not disabled and upon review finding said decision not supported by substantial evidence. Remand will also allow the Commissioner to fulfill his/her role of resolving conflicting evidence, consider additional evidence pertinent through medical expert's testimony and vocational expert's testimony under the proper hypothesis and as to jobs existing of sedentary nature, within plaintiff's residual functional limitations. Freeman v. Barnhart, 274 F.3d at 609.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge, having perused the record and considered whether there was substantial evidence in support of the decision rendered by the Commissioner concludes that it is not supported by substantial evidence and the matter is REMANDED for further proceedings.

IT SO ORDERED.

Judgment is to be entered accordingly.

In San Juan, Puerto Rico, on this 1st day of November of 2011.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE